IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Michael Carlyle McKaughan, *As Personal Representative For the Estate of Sally Rachel Pringle McKaughan*, <br><br> Plaintiff, <br><br> v. <br><br> Wells Fargo Bank NA; United States of America, Department of Housing and Urban Development, <br><br> Defendants. | Case No. 6:22-cv-02492-JDA <br><br> **OPINION AND ORDER** |

This matter is before the Court on motions by Defendant Wells Fargo Bank NA ("Wells Fargo") for summary judgment and to strike Plaintiff's demand for a jury trial and a motion by Defendant United States of America, Department of Housing and Urban Development ("HUD") to dismiss or, in the alternative, for summary judgment. [Docs. 42; 43; 45.]

Plaintiff filed this action in the Greenville County Court of Common Pleas, and Wells Fargo removed it to this Court on August 1, 2022. [Docs. 1; 1-1.] Wells Fargo filed its summary judgment motion and its motion to strike Plaintiff's demand for a jury trial on October 12, 2023. [Docs. 42; 43.] The next day, HUD filed its motion to dismiss or, in the alternative, for summary judgment. [Doc. 45.] The parties then filed responses and replies to the motions. [Docs. 55; 56; 57; 60; 61; 63.] All three motions are ripe for review.

## BACKGROUND

**Powers of Attorney**

On November 4, 1999, Rachel Pringle McKaughan ("Ms. McKaughan") executed a durable general power of attorney, appointing her son Michael McKaughan ("Michael") as her true and lawful attorney (the "1999 Power of Attorney"). [Doc. 45-1.] On April 4, 2007, as part of general estate planning, Ms. McKaughan executed another durable general power of attorney, appointing Michael as her true and lawful attorney (the "2007 General Power of Attorney"). [Docs. 45-3; 45-5 at 5–6 (45:16–46:4).] The 2007 General Power of Attorney granted Michael "full, complete, and general power" to act on Ms. McKaughan's behalf, including the power to "engage in litigation involving" Ms. McKaughan, her property, or any of her interests. [Doc. 45-3 at 3–4.] However, it did not purport to preclude Ms. McKaughan from taking those same actions, and it allowed her to amend or revoke the 2007 General Power of Attorney at any time. [*Id.* at 8.] It was recorded in the Office of the Register of Deeds for Greenville County on May 25, 2007. [Doc. 45-3 at 11.]

On May 30, 2007, Ms. McKaughan executed a specific power of attorney, appointing Michael as her true and lawful attorney-in-fact for purposes of performing "all and every act that [Ms. McKaughan] may legally do through an attorney-in-fact as to the execution, delivery, and consummation of a mortgage loan in favor of [Wells Fargo]" (the "2007 Specific Power of Attorney"). [Doc. 45-7.] As with the 2007 General Power of Attorney, the 2007 Specific Power of Attorney did not purport to preclude Ms.

McKaughan from taking the actions that it allowed Michael to take on her behalf. [Doc. 45-7.]

**The Relevant Loans and Ms. McKaughan's Death**

On June 13, 2007, Wells Fargo executed a mortgage with Ms. McKaughan in which it loaned her $225,000.00 (the "2007 Wells Fargo Mortgage"), secured by her property located at 627 Pelham Road, Greenville, South Carolina (the "Property"). [Doc. 45-8.]  The loan closed in Charleston, South Carolina.  [Doc. 45-5 at 7 (47:9–11).] The McKaughans elected to close the loan in Charleston because their mortgage broker had a relationship with a particular Charleston attorney.  [*Id.* at 8 (48:13–20).]  Michael, as his mother's attorney-in-fact, executed the loan documents in Charleston, and Ms. McKaughan participated by telephone from Greenville.  [*Id.* at 7 (47:2–17).]

On February 17, 2009, Ms. McKaughan executed a commercial mortgage with Independence National Bank with an original principal amount of $65,000.00 (the "Independence Mortgage"), also secured by the Property.  [Doc. 45-10.]  Ms. McKaughan executed the Independence Mortgage in her individual capacity.  [*Id.* at 7.]

Also in 2009, Ms. McKaughan decided to apply for a home equity conversion mortgage ("HECM"), also known as a reverse mortgage.[1]  [Doc. 45-5 at 3 (27:2–23).] As part of the application process, she received federally required counseling for HUD/FHA-insured reverse mortgages.  [Doc. 45-11.]  On September 8, 2009, Ms.

---

[1] HECMs allow elderly homeowners to convert a portion of their accumulated home equity into liquid assets.  12 U.S.C. § 1715z-20(a).  In an HECM, the homeowner selects a payment plan by which to receive the loan proceeds.   24 C.F.R. § 206.19. Homeowners are generally not required to repay the loans as long as the home remains the principal residence of the borrower or an eligible non-borrowing spouse.  *Id.* § 206.39.

3

McKaughan executed an HECM with Wells Fargo in the amount of $660,000.00 (the "HECM"). [Doc. 45-12.] Ms. McKaughan executed the HECM in her individual capacity. [*Id.* at 9.] According to the HUD-1 Settlement Statement, the proceeds from the HECM were used to pay off the 2007 Wells Fargo Mortgage and the Independence Mortgage in full (a total of $281,163.98) and to provide Ms. McKaughan with $39,459.71 in cash. [Doc. 45-13; *see also* Doc. 45-14.] Defendants maintain based on deposition testimony that Attorney Robbin Garrison and her sister, Kelly Harvey, also an attorney, personally attended the closing and witnessed the execution of the HECM, and Garrison served as the notary. [Docs. 45-12 at 9–10; 45-15 at 4–5 (24:4–12, 30:6–22).] The HECM was assigned to HUD on September 1, 2016.[2] [Doc. 56-5.]

Ms. McKaughan passed away on July 14, 2021. [Docs. 1 ¶ 40; 8 ¶ 40; 45 at 11.]

**This Action**

In this action, Plaintiff seeks a declaratory judgment that the HECM was void ab initio or, in the alternative, that it may be rescinded. [Doc. 1-1 ¶¶ 45–62.] In support of this claim, Plaintiff alleges that Ms. McKaughan lacked the mental and legal capacity to execute the HECM, that Wells Fargo was aware of her lack of capacity, and that that awareness "was the reason Wells Fargo required" both the 2007 General Power of Attorney and the 2007 Specific Power of Attorney "in order for the [2007 Wells Fargo Mortgage] to be executed." [*Id.* ¶ 47.] Plaintiff also alleges that the HECM was executed in violation of South Carolina Code § 29-4-60 because "Wells Fargo failed to advise

---

[2] An original lender may assign an Federal Housing Administration-insured HECM to Defendant HUD under certain circumstances, including "if the outstanding loan balance is equal to or greater than 98 percent of the maximum claim amount" and if other conditions are met. 24 C.F.R. § 206.107(a).

4

[Ms. McKaughan] and have her acknowledge she received the statutorily required statement of seeking independent counsel on real estate transactions." [*Id.* ¶ 51.] Plaintiff further alleges that "upon information and belief, Garrison, supposedly the notary and witness, was not physically present when [Ms. McKaughan] executed the [HECM]," thereby violating South Carolina Code § 26-1-90(C)(1). [*Id.* ¶¶ 53–54.]

## APPLICABLE LAW

**Rule 12(b)(1) Dismissal Standard**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure examines whether the complaint fails to state facts upon which jurisdiction can be founded. Fed. R. Civ. P. 12(b)(1). Typically, it is the plaintiff's burden to prove jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "However, where a party challenges the subject matter jurisdiction of the court on the grounds that the party is an arm of the state entitled to sovereign immunity, the burden of persuasion lies with the party asserting the immunity." *Hutto v. S.C. Ret. Sys.*, 899 F. Supp. 2d 457, 466 (D.S.C. 2012) (citing *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006)). The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (internal quotation marks omitted).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id*. at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id*. at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id*.  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Id.* at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Defendants argue that they are entitled to summary judgment for several reasons. First, they argue that Plaintiff has not shown a genuine dispute of material fact concerning whether Ms. McKaughan lacked the mental capacity needed to enter the HECM [Docs. 42 at 11–15; 45 at 15–19]; whether Wells Fargo had notice that she lacked any such capacity [Docs. 42 at 15–17; 45 at 19–21]; and whether Wells Fargo complied with all legal and statutory requirements concerning the closing [Docs. 42 at 17–19; 45 at 21–23]. Second, Defendants contend Plaintiff cannot demonstrate grounds justifying rescission. [Docs. 42 at 19–20; 45 at 23–24.] And third, Defendants

argue the doctrine of laches bars Plaintiff's action.³  [Docs. 42 at 20–21; 45 at 24–25.] The Court agrees with Defendants that, even assuming that Ms. McKaughan lacked the mental capacity needed to enter the HECM, Plaintiff has not shown a dispute of material fact concerning whether Wells Fargo had notice that Ms. McKaughan lacked that capacity.  The Court also agrees with Defendants that Plaintiff has failed to demonstrate a dispute of material fact concerning whether Wells Fargo failed to comply with the statutory and legal requirements concerning the closing of the HECM.  Finally, the Court agrees with Defendants that, apart from those two deficiencies, Plaintiff has not created a genuine dispute of material fact concerning whether he is entitled to the remedy of rescission.  For all of these reasons, the Court concludes that Defendants are entitled to summary judgment.⁴

**Notice of Mental Capacity**

Under South Carolina law, when "a person has not been adjudicated incompetent and is not insane so as to warrant confinement in an institution, persons

---

³ HUD also argues that this Court lacks subject matter jurisdiction regarding any claims against it on the basis of sovereign immunity and because Plaintiff lacks prudential standing to sue HUD. [Doc. 45 at 13–15.] The Court concludes that because the action here is akin to an action to quiet title seeking the remedy of rescission, Plaintiff adequately alleged facts establishing waiver of sovereign immunity. *See Wilkinson v. United States*, No. 91-1795, 1992 WL 188144, at *2 n.2 (4th Cir. Aug. 7, 1992) ("Section 2410 [of Title 28] provides a limited waiver of sovereign immunity for the sole purpose of quieting title to 'real or personal property on which the United States has or claims a mortgage or other lien.'").  As for prudential standing, that issue does not impact jurisdiction, *see United States v. Day*, 700 F.3d 713, 721 (4th Cir. 2012) (explaining that, unlike constitutional standing, prudential standing is not a jurisdictional question), and the Court declines to address it given the Court's conclusion that Defendants are entitled to summary judgment for the other reasons to be discussed.

⁴ Because the Court concludes that Defendants are entitled to summary judgment for these reasons, the Court does not address the parties' arguments about whether Ms. McKaughan actually lacked the capacity to enter into the transaction or whether the

8

dealing with him have a right to rely on the presumption of mental competency unless they have actual notice otherwise." *Eaddy v. Dorn*, 345 S.E.2d 513, 515 (S.C. Ct. App. 1986). "[A] contract entered into with an incompetent person in good faith, without fraud, and supported by fair consideration is a valid contract." *Id.*

Here, it is undisputed that Ms. McKaughan had not been adjudicated incompetent at the time she entered into the HECM. [Doc. 42-4 at 12 (71:20–22).] However, Plaintiff argues, for two reasons, that he has forecasted evidence that Wells Fargo had actual notice of Ms. McKaughan's lack of mental capacity. [Docs. 56 at 29–31; 57 at 27–28.] First, Plaintiff contends that Wells Fargo "required" that Ms. McKaughan grant the 2007 Specific Power of Attorney before Wells Fargo would enter into the First Mortgage. [Docs. 56 at 30; 57 at 27.] Second, Plaintiff argues that a note from Ms. McKaughan dated April 28, 2009, provided Wells Fargo notice that she lacked the mental capacity to enter into the transaction. [Docs. 56 at 30; 57 at 28.]

The Court concludes that Plaintiff has failed to forecast any evidence that Wells Fargo required the 2007 Specific Power of Attorney or even encouraged it, let alone that Wells Fargo was motivated by concerns about Ms. McKaughan's mental capacity.[5] The Court thus concludes that Plaintiff has failed to demonstrate a genuine dispute of material fact concerning whether the existence of the 2007 Specific Power of Attorney

---

doctrine of laches bars Plaintiff's action, and the Court finds as moot Wells Fargo's motion to strike Plaintiff's request for a jury trial [Doc. 43].

[5] As for the 2007 General Power of Attorney, Michael testified it was simply one of several steps that Ms. McKaughan took for general estate planning purposes. [Doc. 45-5 at 5–6 (45:1–46:4).]

9

gave Wells Fargo notice that Ms. McKaughan lacked the mental capacity to enter into the HECM.

The same is true regarding the handwritten note that Plaintiff references. On one of the forms signed as part of the HECM application process, Ms. McKaughan checked a box stating "'I do not choose to meet face to face with the lender.'" [Doc. 57-10 at 4 (13:3–22) (internal quotation marks omitted).] Ms. McKaughan added the following language on the form: "I do, however, need to go over figures when the appraisal is complete. I am 'astounded' . . . at the prices. . . . I read in my material for closing interest and all. . . The other expenses! I do not guarantee that this is a done deal . . . until . . . I see some final figures. Please set up a date to go over all of this. Thank you, Rachel McKaughan 4/28/2009."[6] [*Id.* at 5 (14:2–21) (internal quotation marks omitted).] Although Plaintiff argues that this note suggests that Ms. McKaughan lacked the capacity to enter into the HECM, the Court does not believe that is a reasonable reading of the note. To the contrary, the note indicates Ms. McKaughan was simply paying attention to the details of the transaction.

In the absence of any notice that Ms. McKaughan lacked the mental capacity to enter into the HECM, Wells Fargo was entitled to rely on the presumption that she had that capacity. *See Eaddy*, 345 S.E.2d at 515. Plaintiff thus has failed to forecast evidence creating a genuine dispute as to any material fact and Defendants are entitled to summary judgment on Plaintiff's action to the extent it is based on a theory of lack of capacity.

---

[6] At her deposition, Wells Fargo's Rule 30(b)(6) representative testified that she did not know whether Ms. McKaughan received a meeting as a result of her note. [Doc. 57-10 at 5 (16:10–12).]

10

**State Statutory Requirements**

Defendants also argue that Plaintiff has failed to show a genuine factual dispute as to whether the HECM was improperly closed in violation of South Carolina statutory requirements in effect at the time the loan closed. [Docs. 42 at 17–19; 45 at 21–23.] The Court agrees.

### *S.C. Code § 29-4-60*

South Carolina law pertaining to mortgages and other liens provides,

> No lender authorized by this chapter to make reverse mortgages may accept an application for a reverse mortgage until the lender has obtained from the South Carolina State Housing Finance and Development Authority the content and format of a statement regarding the advisability and availability of independent information and counseling services on reverse mortgages that must be provided by the lender to the borrower pursuant to subsection (B).

S.C. Code Ann. § 29-4-60(A). Subsection (B), in turn, provides that "[n]o reverse mortgage commitment may be made by a lender unless the loan applicant attests in writing that the applicant received from the lender at the time of initial inquiry the statement provided for in subsection (A)."[7]  *Id.* § 29-4-60(B).

Although the Complaint alleges that "Wells Fargo failed to advise [Ms. McKaughan] and have her acknowledge she received the statutorily required statement of seeking independent counsel on real estate transactions" [Doc. 1-1 ¶ 51] and Plaintiff repeats that allegation in his memoranda opposing summary judgment [Docs. 56 at 31;

---

[7] This type of counseling is mandated by federal regulations. 24 C.F.R. § 206.41 (explaining requirement to receive housing counseling from participating housing counseling organizations outside of HUD). Indeed, the record shows that prior to accepting the loan application for the HECM, Ms. McKaughan underwent the counseling that these regulations require. [Doc. 45-11.]

57 at 28], Plaintiff fails to identify any evidence supporting that assertion. Accordingly, to the extent Plaintiff's action is based on the theory that the HECM is not valid due to a violation of S.C. Code § 29-4-60, Defendants are entitled to summary judgment.

### *S.C. Code § 26-1-90*

The same is true of the theory that Ms. McKaughan's signatures were not properly witnessed. South Carolina Code § 30-5-30 provides, with exceptions not applicable here, that "before any deed or other instrument in writing can be recorded in this State, it must be acknowledged or proved by the method described" in the statute. That method requires that the execution of a deed or other instrument be signed by the mortgagor "in the presence of two witnesses, taken before some officer within this State competent to administer an oath." S.C. Code § 30-5-30(B). Additionally, South Carolina Code § 26-1-90(C)(1) provides that "[a] notary may not perform a notarial act if the . . . principal or subscribing witness is not in the notary's presence at the time the notarial act is performed."

Plaintiff alleges that the HECM was not executed in compliance with § 26-1-90(C)(1) because "upon information and belief, Garrison, supposedly the notary and witness, was not physically present when" Ms. McKaughan executed the HECM. [Doc. 1-1 ¶ 53; *see id.* ¶ 54.] Plaintiff repeats the allegation in his memoranda opposing summary judgment. [Docs. 56 at 31; 57 at 28–29.] However, Plaintiff fails to demonstrate a genuine dispute as to any material fact on this point.

In her deposition, Garrison testified that she remembered going to Ms. McKaughan's home for the closing. [Doc. 45-15 at 4 (24:4–12).] Garrison testified that

she and Harvey signed as witnesses and that they would not have done so if they had not physically witnessed the signatures. [*Id.* at 5 (30:6–25).]

In an attempt to create a fact issue, Plaintiff points to the testimony of Margaret Pringle, who stated that she walked into Ms. McKaughan's home through the back door as a man was leaving the home. [Doc. 57-8 at 5–6 (22:25–23:3).] Pringle testified that Ms. McKaughan told Pringle that she had "just signed [her] reverse mortgage" and that the man leaving her house was "from Wells Fargo." [*Id.* at 6 (23:3–6); *see id.* at 8 (52:18–20).] Pringle also testified that when she entered the home, neither Harvey nor Garrison were inside. [*Id.* at 7 (24:18–25).] However, as to Ms. McKaughan's statement that she had "just signed [her] reverse mortgage," Pringle did not testify that she gave any indication as to whether that meant a few seconds ago, several minutes ago, or more. Without further specificity, no reasonable factfinder could infer that Garrison and Harvey had not left before Pringle arrived, even assuming that Pringle's testimony concerning Ms. McKaughan's statement is accurate and would not be inadmissible hearsay. Pringle's testimony therefore fails to give rise a genuine factual dispute regarding whether Garrison and Harvey were present when Ms. McKaughan penned the signatures that needed to be witnessed.[8]

---

[8] In any event, as Defendants argue [Docs. 42 at 19; 45 at 22], even if the Court were to assume that Garrison and Harvey did not actually witness McKaughan's signatures, that would not affect the enforceability of the agreement as between Ms. McKaughan and Wells Fargo. *See In re Spencer*, 354 B.R. 758, 763 (Bankr. D.S.C. 2006) ("An improperly witnessed mortgage or even a mortgage without witnesses is not void as between the parties.").

The Court notes that Defendants also argue that Plaintiff's claims based on his entitlement to rescission fail because Plaintiff has not offered, as part of the rescission remedy, to return Defendants to the status quo ante by repaying, with interest, the amounts they have paid out. [Docs. 42 at 19–20; 45 at 23–24.] Defendants are correct

Because Plaintiff has failed to show a genuine dispute of material fact concerning his assertion that the HECM is void ab initio or should be rescinded, Defendants' motions for summary judgment are granted.

## **CONCLUSION**

For the reasons discussed above, Wells Fargo's motion for summary judgment [Doc. 42] is GRANTED; its motion to strike Plaintiff's request for a jury trial [Doc. 43] is FOUND AS MOOT; and HUD's motion to dismiss or, in the alternative, for summary judgment [Doc. 45] is GRANTED.  Plaintiff's case is DISMISSED with prejudice.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

January 15, 2025
Greenville, South Carolina

---

that under South Carolina law, "an incompetent may not set aside a transaction from which he has benefitted unless he restores the other party to the status quo ante." *Shepard v. First Am. Mortg. Co.*, 347 S.E.2d 118, 120 n.1 (S.C. Ct. App. 1986); [*see* Docs. 42 at 20; 45 at 23].  Plaintiff argues that in this case repayment of the amounts Defendants have paid would be "unreasonable" and maintains that Ms. McKaughan was "damaged" by entering into the HECM. [Docs. 56 at 32–33; 57 at 29–30.]  Plaintiff, however, has not identified any evidence supporting his claim or even provided any factual explanation for his assertion.  Accordingly, Plaintiff has failed to show a genuine dispute of material fact concerning whether he is entitled to rescission, and this reason serves as an additional basis for granting summary judgment to Defendants.

14